**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | |
|---|---|
| DOYLE G. YOUNG, § | |
|     PLAINTIFF, § | |
| § | |
| VS. § | CIVIL ACTION NO. 4:06-CV-39-Y |
| § | |
| JO ANNE B. BARNHART, § | |
| COMMISSIONER OF SOCIAL SECURITY, § | |
|     DEFENDANT. § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND
NOTICE AND ORDER**

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of the United States Magistrate Judge are as follows:

FINDINGS AND CONCLUSIONS

A.    STATEMENT OF THE CASE

Plaintiff Doyle G. Young brings this action pursuant to Section 405(g) of the Social Security Act, Title 42 of the United States Code, for judicial review of a final decision of the Commissioner of Social Security denying his claim for disability insurance benefits under Title II of the Social Security Act. Young applied for disability benefits on June 20, 2002, with an alleged disability onset date of April 1, 1999. (Tr. 40). His disability insured status expired December 31, 2002. (Tr. 43). After the Social Security Administration denied his application for benefits both initially and on reconsideration, Young requested a hearing before an administrative law judge (the "ALJ"), and

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge–Page 1**

ALJ J. Frederick Gatzke held a hearing on September 25, 2003 in Fort Worth, Texas. (Tr. 278). Young was represented by counsel. On November 25, 2003, the ALJ issued an unfavorable decision and found that Young was not disabled at any time before the date his insured status expired because he retained the residual functional capacity (RFC) to perform a modified range of light work activity. (Tr. 11-21). The Appeals Council denied Young's request for review of his case, leaving the ALJ's decision to stand as the final decision of the Commissioner. (Tr. 4).

B. STANDARD OF REVIEW

The Social Security Act defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. § 423(d)(1)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. § 404.1520. First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. § 404.1527. Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(c). At the third step, disability will be found if claimant's impairment or combination of impairments meets or equals an impairment listed in the appendix to the regulations. *Id.* § 404.1520(d). Fourth, if disability cannot be found on the basis of claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* § 404.1520(e). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience.

*Id.* § 404.1520(f); *Crowley v. Apfel,* 197 F.3d 194, 197-98 (5th Cir.1999).

At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant satisfies this responsibility, the burden shifts to the Commissioner at step five of the process to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Crowley*, 197 F.3d at 198. If the Commissioner meets this burden, the claimant must then prove that he cannot in fact perform the work suggested. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). A finding at any point in the five-step process that a claimant is disabled or not disabled is conclusive and terminates the analysis. *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002).

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id*. A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* Conflicts in the evidence are for the Commissioner and not the court to resolve. *Masterson*, 309 F.3d at 272. The court will not re-weigh the evidence, try the questions *de novo,* or substitute its judgment for the Commissioner's, even if the court believes the evidence weighs against the Commissioner's decision. *Id.*; *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir.2000); *Hollis*, 837 F.2d at 1383.

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge–Page 3**

C.  ISSUES

   1.  Whether substantial evidence supports the ALJ's assessment of Young's residual functional capacity;

   2.  Whether the ALJ properly addressed the credibility of witnesses;

   3.  Whether substantial evidence supports the ALJ's determination at Step Five of the sequential evaluation process; and,

   4.  Whether the Commissioner adequately considered a Veterans Administration disability rating.

D.  ADMINISTRATIVE RECORD

   1.  Treatment History

The Veterans Administration (VA) has provided medical treatment to Young since 1999. Young has reportedly had irritable bowel syndrome for more than twenty years, beginning during his military service in Vietnam. (Tr. 153). Diagnostic studies have revealed no significant findings. (Tr. 124). In June 2000, Young complained of a two-week history of nausea, vomiting, and diarrhea. He was given an antibiotic and reported improvement in his condition within a few days. (Tr. 188). During a check-up in July 2000, Young reported distressing diarrhea with cramping, nausea, dizziness, and anxiety. (Tr. 182). He reported using marijuana to alleviate his physical symptoms. (Tr .182).

A psychiatric assessment performed July 13, 2000 indicated that Young exhibited symptoms of depression and anxiety. Both physical and psychological problems were blamed for Young's current stress. (Tr .181-82). In August 2000, Young was diagnosed with a somatization disorder. (Tr. 170). Young was referred to Virgil Cox, M.D., for psychiatric evaluation, and for the first time,

was diagnosed with post traumatic stress disorder (PTSD). (Tr. 153, 164-67).

At a follow-up visit on September 20, 2000, Young reported a weight loss of seventeen pounds since April. (Tr. 163). He said he did a lot of walking and stayed outdoors most of the time. He stated that he was unable to work because he never knew when he might be sick and had missed many days of work because of illness. Cox noted that Young, unlike most veterans, had had only three jobs during his career. (Tr. 163). In October 2000, Young complained of diarrhea occurring two or three times daily and periodic episodes of nausea. (Tr. 161). In January 2001, Young reported an increase in his gastrointestinal symptoms after it was discovered that his father might have cancer. (Tr. 160).

Cox's treatment notes from March 2001 report PTSD as Young's primary diagnoses, but Young was also diagnosed with major depression and a sleep disorder. (Tr. 91). Cox indicated that irritable bowel syndrome was tied to Young's PTSD, and noted that both conditions began during Young's military service in Vietnam. (Tr. 191, 153). Cox recommended a coordinated treatment plan for Young's gastrointestinal disorder, PTSD, and stress. On October 29, 2001, Young reported daily nausea with intermittent episodes of diarrhea, decreased sleep, and a rash associated with stress. He also complained of nightmares despite the regular use of his medication. (Tr. 145).

During a check-up in January 2002, Young reported alternating bouts of diarrhea and constipation, but said he was feeling well overall and felt better than he had in a long time. (Tr. 143). A mental health evaluation in May 2002 confirmed the diagnoses of PTSD and recurrent depression. (Tr. 136, 239). Psychologist Alina Suris, Ph.D., opined that Young remained unemployable given his current mental state and history of anxiety and PTSD-related symptoms.

**Findings, Conclusions and Recommendation of**
**the United States Magistrate Judge–Page 5**

(Tr. 136). Young complained of dizziness during a check-up in August 2002, but denied any other symptoms. (Tr. 238). The dizziness had resolved by the time he visited Cox in September. (Tr. 240).

Young underwent a consultative psychiatric evaluation with Ranganath Habbu, M.D., on September 27, 2002. (Tr. 203). Young drove himself to the interview. He complained that he was unable to handle stress and experienced diarrhea, nausea, and cramps daily. Young also complained of decreased sleep, flashbacks, and nightmares. VA physicians had only recently diagnosed him as suffering from PTSD, although his symptoms reportedly began in 1971 or 1972. (Tr. 203).

Young had participated in outpatient psychiatric care with the VA for the past two and a half years. He admitted using cocaine and alcohol in the past, but quit in 1998. He continued to use marijuana weekly. (Tr. 203). Young described a good relationship with his family and with his partner of thirty years, who currently supported him. His leisure activities included boating and fishing. He reported that he got up at 7 a.m., took his medication, and did chores or yard work. He would have lunch and then do yardwork or go boating or fishing in the afternoon. He watched television after dinner and was usually in bed by 10:30 p.m. He socialized with neighbors, was able to go shopping, and reported no problems completing tasks. (Tr. 204).

Young was pleasant and cooperative during the evaluation, and his speech was coherent, logical, and relevant. His mood was irritable, with an appropriate affect. (Tr. 204). Young admitted having occasional suicidal thoughts, but denied any intent or plan. He was alert and oriented, and was able to correctly interpret proverbs. Recent, remote, and immediate recall was intact. His concentration was intact, and his IQ and fund of knowledge were considered to be in the average

**Findings, Conclusions and Recommendation of**
**the United States Magistrate Judge–Page 6**

range. (Tr. 204). Habbu diagnosed PTSD by history and assessed a fair prognosis. Habbu opined that Young would benefit from vocational guidance and training. (Tr. 204).

In December 2002, Young was seen at the VA clinic for complaints of back pain as a result of cutting wood. (Tr. 242). He denied any other problems, and said his current medications were working well. He exhibited no pain or functional limitation during the examination. (Tr. 242).

At the request of Young's counsel, Cox completed a medical source statement dated April 14, 2003. Cox stated that Young had symptoms of both an anxiety-related and somatoform disorder that resulted in marked restrictions in his social functioning and his concentration, persistence, or pace, and caused repeated episodes of deterioration or decompensation in work or work-like settings. (Tr. 229-30). Young's treating physicians also noted that Young suffered intermittent loss of bowel control and opined that his poor relational abilities would lead to problems in job stability. (Tr. 232).    2.    Administrative Hearing

Young testified that he was born April 7, 1950. He completed high school and was drafted into military service. (Tr. 167, 281). After his discharge from the military, he worked as a service manager in an automotive shop. (Tr. 281). Young testified that he stopped working in 1999 because he was unable to tolerate the stress, and he was having problems with diarrhea, vomiting, and his nerves. (Tr. 282).

Young's primary care physician, David Hartman, had been treating him for irritable bowel syndrome since 1999. (Tr. 283). Hartman had tried various combinations of medication to treat Young's condition, but Young continued to experience symptoms. Young also saw Cox every three to six months for psychiatric treatment and medication refills. (Tr. 284). Young testified that he had

**Findings, Conclusions and Recommendation of**
**the United States Magistrate Judge–Page 7**

nightmares about artillery shells and women and children burning, and these nightmares continued despite his use of medication. Young testified that Cox had advised him to avoid being around people because of the stress. (Tr. 288). Young testified that he had an application for veteran's benefits pending before the VA based on his PTSD. (Tr. 289-90).

In response to questions from his attorney, Young testified that the consultative psychiatric examiner had spent only fifteen or twenty minutes with him. (Tr. 290). Young testified that he had suffered from irritable bowel syndrome since 1972, which had made it difficult for him to work. He would soil his pants at least every other week when he was working, and none of the treatment he had received over the years had helped him. (Tr. 291-92). Young testified that sometimes he had a ten- or fifteen-minute warning before he had bowel problems, but sometimes he had no warning. (Tr. 292). Young dined out occasionally, but was selective about where he sat because he did not like to have people behind him. (Tr. 292). When he was working, Young sometimes had difficulty getting along with the customers or supervisors if he thought they were acting unreasonably. Traffic also made him irritable, so he avoided driving. (Tr. 293). Young testified that he lived on a lake and would sit on the porch and watch birds. Some days he went fishing. He also pulled weeds or did some light gardening, but sometimes he would spend two or three days in bed or in the house because of gastrointestinal symptoms. (Tr. 294). Young testified that he had problems with enclosed rooms. (Tr. 295). He had trouble concentrating when watching movies or reading books. (Tr. 296). He estimated that he used to miss work at least three days a month because of irritable bowel syndrome. (Tr. 296). He admitted smoking marijuana two or three times a week, (Tr. 298), but testified that marijuana calmed him and helped alleviate the nausea. (Tr. 302).

Young's partner, Robert Jones, also testified during the hearing. Jones testified that Young's condition had improved after he began seeing a psychiatrist. (Tr. 303). Jones said that Cox had explained that Young's intestinal problems were a physical manifestation of PTSD. Although Young was better, he still had irritable bowel syndrome and continued to soil his clothes two or three times a month. (Tr. 304). Jones testified that Young had difficulty coping with even minor irritations. Young also avoided people and was depressed about his situation. (Tr. 305).

Vocational expert Shelly Eike also testified. Eike identified Young's previous work as a service manager and garage supervisor as light, semi-skilled to skilled work, although Young had apparently done heavier lifting than a light job would generally require. (Tr. 306). The ALJ asked Eike if Young would be able to return to has past relevant work if he was limited to light exertion and only incidental public contact. (Tr. 306). Eike opined that Young's previous work would not be suitable. The ALJ asked Eike to consider

> a hypothetical individual, then, the same education and work experience as the Claimant limited to work at the light exertional [level] with nothing more than incidental contact with the public, and performed primarily out of doors, would there be any job that – in the national economy such an individual could perform?

(Tr. 307). Eike identified work as a car rental deliverer, with at least 2,000 jobs in Texas and 20,000 jobs nationally, or newspaper delivery person, with at least 9,000 jobs in Texas and 120,000 jobs nationally. (Tr. 307). She noted that these jobs were performed outside of buildings and with limited access to restroom facilities. (Tr. 308-09).

3.     ALJ Decision

The ALJ found that Young had not engaged in substantial gainful activity since April 1,

1999, and as of December 31, 2002, Young had severe irritable bowel syndrome, post traumatic stress disorder, and depression; however, the ALJ found that Young had no impairment or combination of impairments meeting or equaling a listed impairment. (Tr. 12). Instead, the ALJ found that Young retained the residual functional capacity for light work activity that could be performed outside and involved no more than incidental public contact. (Tr. 18). Although Young was unable to perform his past relevant work, the ALJ relied on the vocational expert's testimony to find Young capable of performing other work existing in significant numbers in the national economy. (Tr. 20). Accordingly, the ALJ found Young was not disabled during the relevant time period and was not entitled to disability insurance benefits. (Tr. 21).

E.   DISCUSSION

    1.   Residual Functional Capacity

Young contends that substantial evidence does not support the determination that he has the residual functional capacity (RFC) for light work activity performed outdoors with only incidental public contact. Young asserts that the Commissioner has failed to comply with her own rules and regulations in making that assessment. In particular, Young argues that the ALJ committed a fundamental error in not appreciating the interplay of his irritable bowel syndrome disorder and PTSD and treating the two disorders separately, which diminished their impact on Young's functional capacity. Young also asserts that this error is apparent in the ALJ's treatment of Cox's opinions.

Cox completed a medical source statement in April 2003 that, if adopted, would compel a finding of disability. Opinions, diagnoses, and medical evidence from a treating physician who is

familiar with the claimant's impairments, treatment, and response should be given great weight in determining disability. *See Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). The Commissioner assigns controlling weight to the opinion of a treating physician if well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527; *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995). Even if a treating source opinion is not entitled to controlling weight under the regulations, that does not mean the opinion should be completely rejected. In many cases, the opinion may be entitled to the greatest weight and should be adopted even if it does not satisfy the test for controlling weight. SOCIAL SECURITY RULING 96-2p. However, the determination of disability always remains the province of the ALJ, and the ALJ can decrease the weight assigned to a treating physician's opinion for good cause, which includes disregarding statements that are brief and conclusory, unsupported by acceptable diagnostic techniques, or otherwise unsupported by the evidence. *See* 20 C.F.R. § 404.1527(e); *Leggett*, 67 F.3d at 564; *Greenspan*, 38 F.3d at 237.

      The ALJ declined to afford Cox's assessment controlling weight, finding it was unsupported by the objective clinical evidence as it related to Young's mental condition, which the ALJ noted was Cox's only area of specialization. The ALJ further found Cox's opinion to be inconsistent with the reports related to Young's physical condition. (Tr. 16). Young argues that the ALJ segregated Young's impairments when weighing Cox's opinions instead of recognizing that his physical and emotional symptoms coincide, which permitted the ALJ to undermine Cox's opinions as being outside his area of expertise.

**Findings, Conclusions and Recommendation of**
**the United States Magistrate Judge–Page 11**

The ALJ, in explaining why controlling weight was not given to Cox's opinion, pointed out several inconsistencies between Cox's statements and the medical records. As one example, the ALJ noted that Cox opined that Young would have difficulty with job stability when Cox had earlier noted that Young had been a stable employee with only three jobs in his employment history. (Tr. 16). The ALJ also observed that Cox had not distinguished between the functional limitations attributable to Young's physical condition as opposed to those caused by his psychiatric condition, but this observation does not mean that the ALJ disregarded the combined effect of Young's impairments in assessing his RFC, and a review of the ALJ's decision as a whole does not suggest the ALJ did so. The ALJ's accurate observation that Cox was a psychiatrist also does not appear to objectionable. The ALJ made that observation when he noted that other VA progress reports from the physicians who treated Young's physical condition reflected that his irritable bowel syndrome was in good control during the time period preceding Cox's written medical assessment. (Tr. 16). The ALJ further noted that, contrary to Cox's conclusion that Young had marked impairments in mental functioning, a mental status evaluation just months before had shown no impairment in these areas. (Tr. 16). The ALJ gave adequate consideration to Cox's opinion and complied with the applicable regulations, rulings, and circuit case law before declining to assign controlling weight to Cox's opinion.

Young also complains that Cox identified numerous areas of deficiency in Young's ability to make occupational adjustments, but the ALJ did not adopt these findings or adopt the findings of any other acceptable medical source with respect to Young's work-related limitations in mental

functioning.[1] The ALJ explained why he disagreed with Cox's assessment of the severity of Young's mental limitations, but Young asserts that the ALJ's functional capacity assessment is unsupported because no medical source other than Cox addressed Young's work-related mental impairments and the ALJ is not qualified to offer such medical opinions on his own.

Young is confusing medical judgments with the ALJ's duty to assess functional capacity, although at times the two may be identical. The regulations distinguish medical source statements from administrative issues reserved to the Commissioner, such as an individual's RFC. SOCIAL SECURITY RULING 96-5p. The ALJ should usually request a medical source statement describing the types of work that a claimant is still capable of performing, but the absence of such a statement does not necessarily make the record incomplete. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). Instead, the inquiry focuses upon whether the decision of the ALJ is supported by substantial evidence in the existing record. *Id*. Young's contention that the ALJ was making improper medical judgments in assessing his functional capacity is meritless.

Young also contends that the ALJ did not comply with the administrative regulations that require the adjudicator to discuss the evidence and how it supports the RFC determination. RFC is what an individual can still do despite his limitations. 20 C.F.R. § 416.945(a); SOCIAL SECURITY RULING 96-8p. It reflects the individual's maximum remaining ability to do sustained work activity in an ordinary work setting on a regular and continuing basis. SOCIAL SECURITY RULING 96-8p; *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). The RFC assessment must include a narrative

---

[1] The occupational report that Young refers to is unsigned and undated. (Tr. 233-35).

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge–Page 13**

discussion describing how the evidence supports each conclusion, citing specific medical facts and non-medical evidence. *Id*. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved. *Id.*

A review of the ALJ's decision establishes that he sufficiently outlined the reasons underlying his RFC assessment. The ALJ summarized Young's treatment history, Cox's proffered opinions, and the testimony presented during the administrative hearing, and noted instances where the evidence conflicted. In particular, the ALJ noted the incongruity between Young's claim that he is unable to perform any level of work activity with his steady work history and daily activities. Given Young's physical and mental health treatment, and Young's testimony that he was told to avoid others and did not like enclosed spaces, the ALJ found Young was limited to light work that was performed outdoors and with only incidental public contact. The ALJ adequately discussed the evidence and reasons underlying his decision, and substantial evidence supports his assessment of Young's physical and mental RFC.

2. Credibility

Young also complains because the ALJ did not make a separate credibility determination with respect to the testimony that Robert Jones gave during the administrative hearing. The ALJ found that Young was not credible to the extent he alleged an inability to engage in any level of work activity, but did not make a similar finding about Jones. (Tr. 18).

The Fifth Circuit has declined to prescribe any rigid or set formula for the ALJ to follow when articulating the reasons underlying his decision on disability. *See Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994). The ALJ outlined the testimony that Young and Jones gave during the

hearing, then explained why Young's various subjective complaints (which Jones had corroborated during his own testimony) were inconsistent with other evidence. Although Young would prefer that the ALJ specifically identify the weight or credibility of Jones' testimony, the ALJ's decision reflects that he considered the testimony presented during the hearing, which is all that is required. *See* SOCIAL SECURITY RULING 96-7p (addressing the evaluation of a claimant's credibility).

Young also complains of the ALJ's reliance on Young's daily activities, and notes that he can more easily structure his daily activities to accommodate his condition than most work environments would allow. A claimant's activities of daily living, in conjunction with other evidence, are a relevant consideration in assessing credibility. *Reyes v. Sullivan*, 915 F.2d 151, 154-155 (5th Cir. 1990). *See also* 20 C.F.R. § 404.1529(c)(3); SOCIAL SECURITY RULING 96-7p. Young fails to demonstrate that the ALJ overemphasized his daily activities in weighing his credibility.

    3.    Step Five Determination

Young complains that substantial evidence does not support the ALJ's determination that he could perform other work available in national economy. Young contends that the availability of restroom access was an acknowledged problem with the work identified by the vocational expert,[2] but the ALJ improperly made a vocational determination when he found that this restriction would not "pose a significant difficulty." (Tr. 20). The ALJ was not making a vocational determination about the requirements of the jobs the vocational expert identified. He was making a functional

---

[2] Young also notes that the ALJ only mentioned the newspaper-delivery job by name, and thus, must have rejected the job of car rental deliverer as unsuitable. The court is not certain that the ALJ's silence signals rejection, but need not resolve the question because the vocational expert noted that both jobs provided limited access to restroom facilities. (Tr. 308).

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge–Page 15**

determination about Young's work-related needs and limitations. In particular, the ALJ found that Young's extensive outdoor activities and the ten- or fifteen-minute warning he usually had before his irritable bowel syndrome caused him problems did not support such a restriction.

Young also faults the ALJ for not addressing whether newspaper delivery is a part-time or full-time job. Young asserts that most newspaper delivery jobs require no more than three hours of work each day to perform all of the tasks associated with the job. Young cites no vocational resource to support his position. He did not ask the vocational expert about the full-time or part-time nature of the job, and the <u>Dictionary of Occupational Titles</u> recognizes the job of newspaper carrier without limitation. DICTIONARY OF OCCUPATIONAL TITLES 292.457-010 (rev. 4th ed. 1991). Moreover, there is no indication that the ALJ based his decision on a determination that Young could work on a part-time basis as opposed to a standard full-time work schedule. (Tr. 18-19). The court declines to find that the job of newspaper delivery person does not qualify as "other work" at Step Five of the sequential evaluation process.

Young also contends that the hypothetical question was defective because the ALJ did not include any of the functional limitations found in Cox's medical source statement. The hypothetical presented to the vocational expert must reasonably incorporate all of the disabilities recognized by the ALJ's residual functional capacity assessment, and the claimant or his representative must be afforded the opportunity to correct any deficiencies in the ALJ's question. *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994). A claimant's failure to point out problems in a defective hypothetical does not salvage that hypothetical as a proper basis for a disability determination. *Boyd v. Apfel*, 239 F.3d 698, 707 (5th Cir. 2001). However, Young cites no authority that would require the ALJ to

incorporate limitations he has not found to exist. The ALJ considered Cox's opinion, but did not concur with the functional limitations outlined in Cox's opinion. Accordingly, the ALJ was not required to incorporate Cox's opinion when forming a hypothetical for the vocational expert's consideration.

    4.    VA Disability Rating

In August 2005, the VA issued a disability determination in which Young was found to be 70% disabled due to PTSD, with an effective date of August 19, 2002. (Tr. 275). That report was forwarded to the Appeals Council in support of Young's request for review. The Appeals Council subsequently denied Young's request for review and specifically stated that the post-hearing evidence that Young had submitted, which included the VA decision, had been considered.

A determination of disability by the VA must be considered and is usually entitled to great weight, but it is not binding on the Commissioner because the criteria applied by the two agencies is different. 20 C.F.R. § 404.1504; *Latham v. Shalala*, 36 F.3d 482, 483 (5th Cir. 1994); *Johnson v. Sullivan*, 894 F.2d 683, 686 (5th Cir. 1990); *Underwood v. Bowen*, 828 F.2d 1081, 1083 (5th Cir. 1987). Complying with the administrative regulations and case law, the Appeals Council affirmed that it had considered the VA rating, but found no basis for disturbing the ALJ's determination. Even if the Appeals Council should have been more explicit in its reasons, Young has not demonstrated that a 70% disability rating is the equivalent of an inability to engage in any substantial gainful activity or that the Appeals Council otherwise erred in upholding the ALJ's decision that Young was not entitled to disability insurance benefits.

Young has not shown a lack of evidence to support the Commissioner's determination that

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge–Page 17**

he is not disabled, nor has he demonstrated that the determination was the result of legal error.

## RECOMMENDATION

It is recommended that the decision of the Commissioner be affirmed.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within ten (10) days after the party has been served with a copy of this document. The court is hereby extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation until November 28, 2006. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996)(en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby ORDERED that each party is granted until November 28, 2006 to serve and file written objections to the United States Magistrate Judge's proposed

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge–Page 18**

findings, conclusions and recommendation. It is further ORDERED that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED NOVEMBER 7, 2006.

/s/ Charles Bleil
CHARLES BLEIL
UNITED STATES MAGISTRATE JUDGE